STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of John Mentes    }
   }
   }   Docket No. 132-6-00 Vtec
   }
   }

Decision and Order on Cross-Motions for Summary Judgment

Appellant John Mentes appealed from the May 31, 2000 decision of the then-Zoning Board of Adjustment (ZBA) of the City of Burlington, affirming the Zoning Administrator's decision not to take enforcement action[1] against Appellees Charles and Cynthia Burns under the 1999 Zoning Regulations. Appellant is represented by Norman Williams, Esq.; Appellees Charles and Cynthia Burns are represented by Stuart M. Bennett, Esq.; the City is represented by Kimberlee J. Sturtevant, Esq. Appellant and Appellees have each moved for summary judgment.

Appellant has moved for summary judgment that the use by seven unrelated students of Appellees' property at 36 North Willard Street falls within the definition of "group quarters" rather than that of a single-family home, in violation of § 5.1.4, § 30.1.2, and Table 5-A of the Burlington Zoning Ordinance. Appellees have moved for summary judgment that the § 30.1.2 definition of "family" is unconstitutionally vague.

The following facts are undisputed unless otherwise noted.

Appellees own a seven-bedroom single-family residence at 36 North Willard Street in the City's Residential-Low Density zoning district. The residence has a common kitchen and living room, two common bathrooms, seven bedrooms, common parking, and a common back yard. The house has one electric meter, one gas meter, and one telephone line. None of the bedroom doors has a lock.

By a lease executed on January 29, 1999, Appellees rented the house as a whole, that is, not divided into separate apartments or rented out as separate rooms, to seven students of the University of Vermont (UVM), for a term of one year, from June 1, 1999 to May 31, 2000. By a lease executed on March 16, 2000, Appellees again rented the property to seven UVM students under a one-year lease from June 1, 2000 to May 31, 2001[2]. Four of the named lessees under the 1999 lease remained lessees under the 2000 lease. During the summers of each lease period, some subtenants lived at the residence, instead of the named lessees. Generally the tenants shared household expenses by paying their respective shares of the rent or utility bills, either to the landlord or the utility, or to the specific lessee in whose name the utility service was registered.

Residential use categories provided for as such[3] in the Zoning Ordinance (Table 5-A) are apartments and attached dwellings, duplexes, planned residential developments, and single detached dwellings. Special residential use categories are bed and breakfast uses, boarding

houses, community houses, convalescent homes, daycare homes and group homes. No explicit provision is made in the Zoning Ordinance for residential uses associated with convents or other religious communities, for residential uses associated with communes, for residential uses associated with shared student housing, or for residential uses associated with private membership clubs (such as ski or sailing clubs or fraternal organizations). Fraternities and sororities are specifically excluded from the definition of ' membership club.' Fraternities and sororities, dormitories, convents and communes[4] are specifically excluded from the definition of " community house."

No argument is made in the present case that the use made of this property was either an apartment or a boarding house use; none of the other residential or special residential use categories listed in Table 5A is applicable. Rather, Appellees argue that the house was used within the definition of " single detached dwelling;" while Appellant argues that the group of lessees failed to meet the definition of family and therefore that their use of the house violated the requirement that the house be used as a " single detached dwelling."

A single detached dwelling unit is defined in the " Definitions" section of the Zoning Ordinance (§ 30.1.2) as a:

Free standing residential structure containing a single family unit occupied by a single nonprofit housekeeping unit, but not including group quarters; see definition of " family" and where rooms are not let to individuals.

Appellees' property is a free-standing residential structure. Rooms are not let to individuals. It therefore qualifies as a " single detached dwelling" use if the seven students fall within the definition of a single family unit, and if their occupancy does not constitute " group quarters."

The term " family" is, in turn, defined as:

One or more persons occupying a dwelling unit and living as a single nonprofit housekeeping unit, but not including group quarters such as dormitories, sororities, fraternities, convents, and communes.

The parties have presented their arguments as if the ordinance presents the choice between either " a single nonprofit housekeeping unit" or " group quarters." It does not do so. Rather, to fall within the zoning use category of ' single detached dwelling,' the occupants of the house must satisfy both prongs of the definition of family. First, they must be living as a single, nonprofit housekeeping unit. Second, even if they are living as a single, nonprofit housekeeping unit, they must also fall outside of the category of " group quarters." Unfortunately, neither the term " group quarters" nor the term " single nonprofit housekeeping unit" is defined in the Zoning Ordinance. The parties have focused entirely on the interpretation of ' single nonprofit housekeeping unit,' but it is the use of the concept of ' group quarters' that is more troubling in this ordinance.

The concept of ' single nonprofit housekeeping unit' is not as vague or as stringent as either Appellant or Appellees argue. The students were living as a single nonprofit housekeeping unit,

in that they shared the use of all of the residence in common, other than each resident's bedroom, and paid their proportional shares of the utilities and the rent. Nothing in the ordinance requires a determination of the permanence or intent of the residents. Even when an ordinance is defined in terms of a functional family unit, " courts have interpreted this phrase in a rather elastic way, generally ruling that any living arrangement which makes use of unified housekeeping facilities satisfies such an ordinance." 2 Edward H. Ziegler, Jr., Rathkopf's The Law of Zoning § 17A.03(a) (Release #69, 3/99).

However, it is more difficult to determine whether the ' shared housing' use of this house falls within the category of " group quarters." First, none of the parties has analyzed how to determine whether the students' shared housing use is similar to or different from the " group quarters" examples of dormitories, sororities, fraternities, convents, or communes. Further, while dormitories, fraternities and sororities are provided for in the Zoning Ordinance as conditional uses in at least two zoning districts, the remaining ' group quarters' types of residential uses, including convents and communes, do not appear to be provided for anywhere in the City. However, none of the parties has addressed the issue of whether this distinction is rationally related to a legitimate governmental purpose in the ordinance.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that both Motions for Summary Judgment are DENIED, as material facts are in dispute as to whether the shared housing use by the students falls within the category of " group quarters," that is, whether it is similar to or different from dormitories, sororities, fraternities, convents, and communes. In connection with this determination, the parties may want to brief the constitutionality, on equal protection grounds, of the category of " group quarters" residential uses, especially regarding those such uses (including convents, communes, and perhaps also this type of shared student housing) not otherwise provided for in the Zoning Ordinance.

We will hold a conference in person at the Costello Courthouse, Monday October 29, 2001 at noon, to discuss how the parties may wish to proceed.

Done at Barre, Vermont, this 22nd day of October, 2001.

_____

Merideth Wright
Environmental Judge

**Footnotes**

1.    We note that the parties have not provided this decision and therefore the Court's understanding of it is deduced from the parties' memoranda.

2.    The parties do not address whether the property is leased to students at the present time, or whether such a use is allowed or addressed by the 2000 Zoning Ordinance. Accordingly, the only question in the present case is whether this use of the property was allowed or was a violation under the previous (1999) Zoning Ordinance.

3.    Public/Institutional use categories include the residential uses of "sorority/fraternity" and "dormitory," under the category of "College/Schools/Educational Institutions."

4.    It appears to the Court that the Zoning Ordinance uses the term "commune" in its 1960s sense to mean a communal living arrangement, rather than in the 1790s French Revolution sense stated by Appellees of a self-governing town or village.